IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBOCAST, INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE, INC., <br><br> Defendant. | Civil Action No. 11-235-RGA |
| ROBOCAST, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | Civil Action No. 10-1055-RGA |

## MEMORANDUM OPINION

Thomas C. Grimm, Esq., Wilmington, Delaware; Steven J. Rizzi, Esq. (argued), New York, New York, Attorneys for Plaintiff.

Richard L. Horwitz, Esq., Wilmington, Delaware; Harrison J. Frahn IV, Esq. (argued), Palo Alto, California, Attorneys for Defendant Apple, Inc.

Thomas Lee Halkowski, Esq., Wilmington, Delaware; Adam J. Kessel, Esq. (argued), Boston, Massachusetts, Attorneys for Defendant Microsoft Corporation.

February 24, 2012
Wilmington, Delaware

*[signature: Richard G. Andrews]*

ANDREWS, U.S. DISTRICT JUDGE:

Before the Court are motions to transfer these two separate cases to the Northern District of California.

On December 6, 2010, Robocast filed a Complaint against Microsoft. Microsoft duly filed an Answer. On March 21, 2011, Robocast sued Apple. Apple responded by filing a motion to transfer. (D.I. 16).[1] Microsoft subsequently filed a similar motion to transfer. (No. 10-1055, D.I. 17). Microsoft states forthrightly (and, in the Court's opinion, correctly) that its transfer motion rises or falls with Apple's. (No. 10-1055, D.I. 27, pp. 1-2).

The Complaints at issue are similar. They are each based on Robocast's ownership of U.S. patent No. 7,155,451, which concerns an "Automated Browsing System for Publishers and Users on Networks Serving Internet and Remote Devices." It was invented by Robocast's President, Damon Torres. Apple products such as AppleTV, Front Row, and iTunes are said to infringe the patent. Microsoft products such as Bing and Windows Vista are also said to infringe the patent.

The transfer motions have been fully briefed and orally argued.

The statutory authority for transferring the case is § 1404(a) of Title 28, which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden of establishing the need for transfer is the movant's, *see Jumara v. State Farm Ins. Co.*,

---

[1] Unless otherwise indicated, Docket Item ("D.I.") citations are to filings in Robocast v. Apple, Civil Act. No. 11-235-RGA. Citations to the record in Robocast v. Microsoft include the case number ("10-1055").

55 F.3d 873, 879 (3d Cir. 1995), which in this case is Apple.[2] The Third Circuit has set forth the framework for analysis:

> "[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."
>
> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." While there is no definitive formula or list of the factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a).
>
> The private interests have included: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted and numbering added).

There is no dispute that the patent infringement action against Apple could have been brought in the Northern District of California, as it is a California corporation with its principal place of business in the Northern District of California.

In my view, interests (1) and (4) support the plaintiff's position that the case should not

---

[2] Given Microsoft's acknowledgement that its motion is dependent upon Apple's, the analysis will be limited to Apple's motion.

-3-

be transferred. Interests (2), (5), (6), and (8) support the defendant's request to transfer the case. Interests (3), (7), (10), (11) and (12) do not add much to the balancing, as they are either inapplicable or marginally applicable to this case. Interest (9) is applicable but does not favor one side or the other.

Plaintiff has chosen Delaware as a forum. That choice weighs strongly in the plaintiff's favor, although not as strongly as it would if the plaintiff had its principal place of business (or, indeed, any place of business) in Delaware. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"); *Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287, 289 (D.Del. 1986) (plaintiff's choice of forum not as compelling if it is not plaintiff's "'home turf'").[3] Robocast's principal place of business is in the State of New York. It is a Delaware corporation, and, while I think that gives Robocast a legitimate reason to sue in Delaware,[4] I think that is also a reason that adds to the weight given its choice to sue in Delaware.

Defendant's preference is the Northern District of California, where it has its principal place of business. Clearly, Defendant's decision to seek to litigate in the Northern District of California is rational and legitimate also.[5]

---

[3] I assume, without deciding, that Delaware is not Robocast's "home turf." *Cf. Intellectual Ventures I LLC v. Altera Corp.*, 2012 WL 297720, *6-7 (D.Del. Jan. 24, 2012) (holding state of incorporation is "home turf" but also analyzing in the alternative).

[4] At oral argument, Robocast also offered as a legitimate reason for suing in Delaware the expertise that it would expect to encounter from a Court that has a heavy patent caseload.

[5] At oral argument, I stated that I did not view Apple's decisions to sue in Delaware in other cases, or not to seek transfer from Delaware in other cases in which it was named as a defendant, as having any relevance to the instant decision. (D.I. 40, pp. 7-8). If there were a question about Apple's capability of litigating a case in Delaware, such information might be

-4-

Although the defendant has argued in its briefing that the claim did not arise in Delaware (D.I. 17, p.9), and that the Apple products that are alleged to infringe were designed, developed and marketed in the Northern District of California, I think the claim that is relevant here is the plaintiff's claim that Apple's products, which are sold and offered for sale all over the United States, including Delaware (D.I. 18, ¶ 3), infringed its patent. Thus, I think the claims arise in every judicial district. S*ee In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). Consequently, this factor has no weight in the balancing.[6]

Apple is omnipresent in everyday life. It is a large and powerful corporation. Robocast consists of its President and two employees. (D.I. 24, ¶ 10). Its founder was at the oral argument on the present motion. Its financial condition pales in comparison to that of Apple. Ten years ago, it had twenty-two employees. (D.I. 24, ¶ 5). While Robocast's primary enterprise today may be litigation, there is little reason to believe that its pockets are deep. (D.I. 24, ¶¶ 8, 10). "We could not even afford to file this lawsuit, except on a contingency basis." (D.I. 24, ¶ 13). There is no reason to doubt that if this litigation turns into a war of attrition, Apple will have the upper hand. I think this factor significantly disfavors transfer.

At this juncture, it is hard to tell who the witnesses might be. It seems likely that a significant number of the non-expert witnesses will be employees of Apple. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). Two current Apple employees

---

relevant, but capability is not at issue.

[6] Of course, the fact that Apple's engineers and marketers for these products are in Northern California is not irrelevant. It merely is analyzed as part of a different factor.

(who live in California) with personal knowledge of relevant events are identified from the Complaint. (D.I. 1, ¶¶ 18-19; D.I. 19, ¶ 12). Apple has submitted the last known locations for 75 people involved in the prior art references cited during the prosecution of the '451 patent. (D.I. 19, ¶ 7). Of those people, 25 are in California and subject to the Northern District of California's subpoena power; 4 are or might be[7] subject to this Court's subpoena power, and 46 are subject to neither Court's subpoena power.[8] (D.I. 19-1, pp. 14-17). Robocast has identified two former Robocast employees with purportedly relevant information (D.I. 24, ¶¶ 14 - 16), and while they live near Delaware, they do not appear to be within this Court's subpoena power. Even assuming their information is relevant, and I am not convinced of that, their existence does not aid Robocast's argument. Unfortunately, a patent case is not like a car accident, where the fact witnesses – or likely trial witnesses – can be identified from day one. All that can be concluded about likely trial witnesses is that a year and a half to two years from now, more of them are more likely to be in California than in Delaware or within 100 miles of Wilmington. If there is a trial,[9] and if there are one or more necessary witnesses who will only testify if subpoenaed, there is a statistically greater likelihood that such witnesses would be within the subpoena power of the Northern District of California than within the subpoena power of the District of Delaware. No likely witnesses who would be unavailable in one location but not the

---

[7] Two are listed as being in Washington, D.C., and, depending upon their exact location, might be within or without this Court's subpoena power. Two are listed as being in New Jersey and would appear to be within this Court's subpoena power.

[8] A dozen of them are listed as having last known addresses in the State of Washington, but whether some or all of them are current or former employees of Microsoft is not described.

[9] As noted in *Intellectual Ventures I LLC v. Altera Corp.*, 2012 WL 297720, *10-11 (D.Del. Jan. 24, 2012), a trial is an unlikely event.

-6-

other have been identified. The odds, however, are that such people exist, and that they are in California. Thus, this factor slightly favors transfer.

Similarly, it is hard to tell where most of the books and records would be (other than Plaintiff's and Apple's). The only identified holders of records are the parties, and their records will be able to be produced in whichever forum has the case. Robocast's President has seventy boxes of hard copy documents and ten boxes of computer hardware material in New York City. (D.I. 24, ¶ 12). The records of Apple relating to its accused products, which are most likely the most important records for this litigation, *see In re Genentech*, 566 F.3d at 1345, are in the Northern District of California (D.I. 18, ¶ 2), and not in Delaware. Apple also suggests that some of the evidence in this case is sufficiently old that there may need to be some effort to retrieve it, and that the materials to do so might be in the Computer History Museum or other locations in Northern California. (D.I. 29, p. 8). Such an argument is fairly speculative. In any event, there are no records identified as only being available for trial in one of the two locations.[10] Thus, this factor favors transfer, but is of marginal weight given that it is likely that Apple's records can be produced at trial wherever trial is held.

Enforceability of the judgment is not an issue.

Practical considerations that could make the trial easy, expeditious, or inexpensive favor the Northern District of California. A trial in Delaware is likely to be marginally less easy and more expensive for Apple than a trial in the Northern District of California, because of travel

---

[10] While there is a paragraph in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011), about "the convenience of the witnesses and the location of the books and records," I do not understand the Federal Circuit to have altered the Third Circuit's focus on the issue being not so much where the witnesses and evidence are, but whether they can be produced in court.

considerations and expenses for witnesses. A trial in the Northern District of California is likely to be marginally less easy and more expensive for Robocast than a trial in Delaware. On balance, the overall cost and inconvenience of a trial in the Northern District of California is likely to be less than it would be in Delaware, but not by a significant amount. Expedition, however, does not seem to depend upon the location of the trial. Thus, this factor slightly favors transfer.

The relative administrative difficulty due to court congestion is difficult to assess. Plaintiff and Defendant both cite statistics suggesting greater court congestion in the court in which it does not want to try the case. I do not find any of the cited statistics to be meaningful in predicting what would happen with this case, either in Delaware or the Northern District of California. I would also note that, in my brief experience, "court congestion" has not caused any delay in assigning trial dates in Delaware. I therefore believe this factor is neutral.

The "local controversy" consideration is inapplicable here. Apple is a major employer in the Northern District of California, but I do not think that makes the claim that Apple is infringing the patent of a Delaware company with a principal place of business in New York into a local California controversy. Thus, I think this factor is neutral.

The public policy of Delaware encourages the use by Delaware corporations – such as Robocast – of Delaware as a forum for the resolution of business disputes.[11] Typically, the

---

[11] The State of Delaware Division of Corporations, on its website, prominently asks, "Why Choose Delaware as Your Corporate Home?" The answer follows: "More than 900,000 business entities have their legal home in Delaware including more than 50% of all U.S. publicly-traded companies and 63% of the Fortune 500. Businesses choose Delaware because we provide a complete package of incorporation services including modern and flexible corporate laws, our highly-respected Court of Chancery, a business-friendly State Government, and the customer service-oriented Staff of the Delaware Division of Corporations."

forum is the Delaware Court of Chancery. More generally, though, Delaware wants corporations to incorporate in Delaware, and the taxes that corporations pay are important to Delaware's financial health. While it is not unusual that a Delaware corporation should sue another corporation in a Delaware court, and is a factor that has some impact on the balancing, *cf. Micron Technology v. Rambus*, 645 F.3d 1311, 1332 (Fed. Cir. 2011)("Given that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware."), this factor significantly overlaps with why Robocast would have chosen Delaware as a venue in the first place, and is less significant than in *Micron* since Apple is not a Delaware corporation. I do not attribute it independent weight as a "public policy" factor. I believe it is taken into account in the first factor.

This is not a diversity case, and thus knowledge of state law is irrelevant here.

Apple states that Robocast's connection with Delaware is entitled to less weight because it is a "non-practicing entit[y]." (D.I. 17, p.8).[12] Robocast was incorporated under the laws of the State of Delaware on January 10, 1997. (D.I. 24, ¶ 4). While it has no physical connection to Delaware, its corporate citizenship is of long standing. There might be cases in which a non-practicing entity's connections to Delaware suggest reasons to discount that connection, *cf. In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) (according no weight to the plaintiff's choice of venue when its "presence in [that venue] appears to be recent, ephemeral, and an artifact of litigation."), but this is not one of them.

---

[12] Robocast disputes whether it is a "non-practicing" entity, pointing to products it has developed in the past. (D.I. 24, ¶¶ 5-6).

I have considered *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011),[13] but I do not think it is particularly helpful in assessing the transfer request in this case, as its facts were very different. I would characterize that case generally as standing for the proposition that when the parties, all the witnesses, and all the evidence are in one distant jurisdiction, and the only connection to Delaware is that it is the state of incorporation of the defendant, and there is no other reason for the suit to be in Delaware, the suit must be transferred, upon timely request, to the distant jurisdiction. In the present case there is a greater connection to Delaware, as the plaintiff is a Delaware corporation with its principal place of business close to Delaware but not to California, and, also of considerable significance, the plaintiff would be inconvenienced by transfer.

Under Third Circuit law, considerable deference is given to the plaintiffs' choice of forum. I think that when the plaintiff is a three-person corporation with Delaware as its long-standing corporate home, and the defendant is Apple, *see Intellectual Ventures I LLC v. Altera Corp.*, 2012 WL 297720, *3 (D.Del. Jan. 24, 2012) (multi-billion dollar companies doing business on an international scale have a greater burden to meet in seeking transfer), there ought to be a compelling reason to overcome plaintiff's choice of forum. Apple has offered valid reasons, but I do not think Apple has shown that the balance of convenience tips strongly enough

---

[13] The Federal Circuit's numerous transfer cases arising from the Fifth Circuit are not controlling as the Federal Circuit interprets the law of the Circuit in which the District Court sits. *See In re Link_A_Media Devices Corp.*, 662 F.3d at 1223. The law of the two Circuits in regard to how to conduct a transfer analysis is different in a number of regards. Of greatest relevance, "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the [transfer] analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). As noted earlier, the Third Circuit treats the plaintiff's choice as a factor of "paramount importance." Additional differences are identified in *Intellectual Ventures I LLC v. Altera Corp.*, 2012 WL 297720, *13 n.7 (D.Del. Jan. 24, 2012).

in Apple's favor so that transfer should be ordered. I will therefore deny Apple's motion to transfer. Consequently, I will also deny Microsoft's motion to transfer.

An appropriate order will be entered.