IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBOCAST, INC., | ) |
| | ) |
| Plaintiff, | ) C.A. No. 11-235-RGA |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| APPLE INC., | ) **PUBLIC VERSION** |
| | ) |
| Defendant. | ) |

**DEFENDANT APPLE INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO EXCLUDE THE TESTIMONY OF
ROBERT J. SHERWOOD AND CREIGHTON G. HOFFMAN**

OF COUNSEL:

Harrison J. Frahn IV
Brandon C. Martin
Patrick E. King
Jason M. Bussey
Michael A. Quick
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
Tel: (650) 251-5000

Brian P. McCloskey
Gregory T. Chuebon
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-3353

Dated: December 16, 2013
PUBLIC VERSION
Dated: December 23, 2013
1134541 / 36689

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Apple Inc.*

## TABLE OF CONTENTS

**Page**

ARGUMENT..................................................................................................................................1

I.  MR. SHERWOOD'S TESTIMONY SHOULD BE EXCLUDED......................................1

    A.    Mr. Sherwood's Testimony Does Not "Fit" The Facts..........................................1

        i.    Mr. Sherwood's Testimony Is Unrelated to the Patent ..............................1

        ii.    Mr. Sherwood's Testimony Is Unrelated to Apple's Products...................2

    B.    Mr. Sherwood Relied On Unverified And Unreliable Data...................................4

    C.    Mr. Sherwood Misconstrues His Sources ..............................................................5

    D.    Mr. Sherwood Engaged In Cherry Picking ............................................................6

II.  MR. HOFFMAN'S TESTIMONY SHOULD BE EXCLUDED........................................7

    A.    Mr. Hoffman's Opinions Rely On Mr. Sherwood..................................................7

    B.    Mr. Hoffman's Equal Profit Split Is Not Tied To The Facts of the Case ...............8

    C.    Mr. Hoffman Violates The Entire Market Value Rule ..........................................9

CONCLUSION.............................................................................................................................10

# TABLE OF CITATIONS

**FEDERAL CASES**

*AVM Techs., LLC v. Intel Corp.*,
C.A. No. 10-610-RGA (Jan. 4, 2013) .................................................................................9

*In re Neurontin Marketing & Sales Practices Litigation*,
No. 04-cv-10981, 2010 WL 559108 (D. Mass. Feb. 12, 2010) ...........................................6, 7

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ............................................................................................9, 10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013) .........................................................................................4

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ...........................................................................................1

*Sanofi-Aventis Deutschland Gmbh v. Glenmark Pharm. Inc., USA*,
No. 07-CV-5855, 2011 WL 383861 (D.N.J. Feb. 3, 2011) ................................................9

*Saudi v. S/T Marine Atl.*,
159 F. Supp. 2d 512 (S.D. Tex. 2001) ...............................................................................2

*Suffolk Technologies LLC v. AOL Inc.*,
No. 1:12-cv-00625 (E.D. Va. Apr. 12, 2013) ....................................................................9

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) .........................................................................................8, 10

*ZF Meritor, LLC v. Eaton Corp.*,
696 F.3d 254 (3d Cir. 2012) ..............................................................................................4

**OTHER AUTHORITIES**

Reference Manual on Scientific Evidence (3d Ed. 2011) .............................................................6

## ARGUMENT

I.  **MR. SHERWOOD'S TESTIMONY SHOULD BE EXCLUDED**

   A.  **Mr. Sherwood's Testimony Does Not "Fit" The Facts**

      i.  **Mr. Sherwood's Testimony Is Unrelated to the Patent**

Apple established that Mr. Sherwood's opinions do not fit the facts of the case because he analyzes the effects of "automated browsing systems" ("ABS"), not U.S. Patent No. 7,155,451 ("the '451 Patent"), and he defines the former far more broadly than the claims do the latter. Mot. at 5, 11-13. Robocast responds, not by denying that Mr. Sherwood ignores key claim limitations, but by arguing that "[e]ven were Mr. Sherwood's definition of ABS advertising broader than the claims . . . that would not require exclusion" because he "is a highly qualified expert" who is "more than competent to define the scope of his focus." Opp. at 15. In other words, it was permissible for Mr. Sherwood to ignore the claims of the patent because he is "highly qualified." That is no response at all.

Because of this conceded disconnect, Mr. Sherwood's analysis cannot help the fact-finder assess damages. Mr. Sherwood's analysis is premised entirely on the notion that ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████████ Because, in other words, █████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ any damages based on an analysis of ABS would necessarily "punish[] beyond the reach of the statute." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). This alone requires that Mr. Sherwood's opinions be excluded.

### ii. Mr. Sherwood's Testimony Is Unrelated to Apple's Products

Apple also established that Mr. Sherwood's opinions do not "fit" because he disclaimed any opinions about the accused products and based his opinions on ABS implementations that bear no resemblance to those products. Robocast responds to the first point by mischaracterizing Mr. Sherwood's analysis. Whereas he testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[1] (Declaration of Jason M. Bussey ("Bussey Decl."), D.I. 343 Ex. 8 at 113:9-115:12), Robocast now claims he opined that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp. at 1), and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* at 15). In support of this reversal, Robocast cites a new declaration from Mr. Sherwood, in which he explains how he "would have" testified had different questions been asked at his deposition. D.I. 379 ¶ 10. But Robocast cannot avoid exclusion by having Mr. Sherwood contradict himself. *See, e.g., Saudi v. S/T Marine Atl.*, 159 F. Supp. 2d 512, 521 (S.D. Tex. 2001) (refusing to assess reliability of expert testimony based on declarations in which experts contradicted "sworn statements [made] during their depositions").

Robocast offers several arguments in defense of Mr. Sherwood's reliance on ABS implementations that are nothing like the accused products. First, citing Mr. Sherwood's new declaration, it says he "lack[ed] sufficient data points to draw conclusions about carousel implementations as distinct from other forms of ABS." Opp. at 15-16. But Mr. Sherwood's report says nothing about attempting unsuccessfully to find information specific to carousels, nor did he mention that at any point during his seven-hour deposition. Moreover, the claimed lack of information would, if credited, explain why Mr. Sherwood should have done a different analysis,

---

[1] Unless otherwise indicated, all emphasis in quoted material is supplied.

2

not justify the one he did. Bad data does not become good just because good data is unavailable. The claim, in any event, is not creditable. Mr. Sherwood found many sources specifically about auto-rotating carousels. They had titles like *"Don't Use Automatic Image Sliders or Carousels, Ignore the Fad"* and *"Auto-Forwarding Carousels and Accordions Annoy Users and Reduce Visibility."* Declaration of Brandon C. Martin ("Martin Decl.") Ex. 2 at 118, 185; *see also id.* at 2, 103, 114, 120, 126; *id.* Ex. 3. He ignored them. *Id.* Ex. 1 at 287:21-305:14.[2]

Next, Robocast argues that "a business person seeking to draw conclusions about the effectiveness of a Showcase-type implementation would look to data relating to ABS advertising generally as a good gauge." Opp. at 5. But for this proposition Robocast cites only Mr. Sherwood's declaration (not his report), which contains only assertion, not analysis. *Id.* At no point does Robocast or Mr. Sherwood attempt to explain why a person would gauge the effectiveness of simple carousels by looking at data for "virtual gaming worlds" and ads graphically depicting the effects smoking has on sexual performance. Nor does Robocast respond to the point that an opinion about the effectiveness of "ABS generally" is as useless as an opinion regarding the effects of "medicine" generally. Mot. at 12.

Finally, Robocast insists Apple is "simply wrong" to say Mr. Sherwood did not control for various factors when conducting his analysis. Opp. at 17. But in the testimony Robocast cites, ███████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████. *Id.* (citing Declaration of Akiva M. Cohen

---

[2] Also, as Mr. Sherwood's research methodology consisted ███████████████ ███, even if he had failed to find "sufficient data points," that would not mean the data do not exist. Robocast's argument is also curious given that Mr. Sherwood apparently considered a mere six data points sufficient to support the conclusions he did draw (though he incorrectly thought he had eleven). *See* Mot. at 6.

("Cohen Decl."), D.I. 378 Ex. 6 at 115:20-117:3, 326:14-328:20). More important, when asked specifically about the "studies" on which he relied, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Bussey Decl. Ex. 8 at 182:13-21 (TLV Media); 219:19-22 (Eyeblaster); 239:18-20 (Dep't of Health); 252:15-17 (Morf Media); 258:8-10 (SteelHouse).

### B. Mr. Sherwood Relied On Unverified And Unreliable Data

Robocast defends Mr. Sherwood's data sources by attributing to Apple the straw-man argument that using the "Internet to identify relevant data for consideration is *per se* and inherently unreliable." Opp. at 17. But the problem with Mr. Sherwood's sources is not that he found them online; it is his complete failure to investigate their accuracy or methodological underpinnings—even though many were self-serving marketing pieces or second-(sometimes third-) hand reports bereft of details. Robocast's sole basis for distinguishing *ZF Meritor* and *Power Integrations*—which excluded experts who similarly relied on unverified data—is to insist that Mr. Sherwood used sources "with which he was familiar and had investigated." Opp. at 17-18; *see also ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292-93 (3d Cir. 2012); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373-74 (Fed. Cir. 2013). Apple is at a loss as to how Robocast could make that claim in light of the testimony cited in Apple's motion, which Robocast does not address. Mr. Sherwood's testimony speaks for itself. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

███████████████████████████████████████████
██████████████████████[3]

### C. Mr. Sherwood Misconstrues His Sources

Robocast responds to the charge that Mr. Sherwood misconstrued his source materials by asserting that "Apple identifies only two sources" subject to this critique. Opp. at 19. That is inaccurate. Apple's motion established that Mr. Sherwood materially misconstrued *five of the six* sources on which he relies ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ Robocast fails to defend these misinterpretations, relying instead on the claim that Mr. Sherwood's "years of experience" allowed him to interpret the documents as he did. Opp. at 19. That is no answer, particularly given that Mr. Sherwood did not base his interpretations ████████████

████████████████████████████████████████████

████████████████████████████████████████[4].

---

[3] The two deposition excerpts Robocast cites, (Opp. at 18), do not support the claim that Mr. Sherwood investigated his sources. In one, he just asserts ████████████████
████████████ Cohen Decl. Ex. 6 at 81:17-82:7. In the other, ████████
████████████████████████████████████████████
████████████████████████████████████ *Id.* at 65:8-68:4.

[4] Robocast also offers no explanation for Mr. Sherwood's mistaken belief that he relied on 11 data points, when he really had only six. *See* Mot. at 6.

### D. Mr. Sherwood Engaged In Cherry Picking

Robocast defends Mr. Sherwood's cherry-picking by claiming he used "statistical methods" and constructed a "Gaussian distribution" to determine which sources he would rely upon. Opp. at 20. But Mr. Sherwood's report lacks a single word about statistics or "Gaussian distributions." Instead, it offers the following rationale: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Bussey Decl. Ex. 5 at 10-11. ▮▮▮▮▮▮▮▮▮▮▮▮ Robocast also fails to explain (and Mr. Sherwood's report does not disclose) how a "Gaussian distribution" could be created from just six data points or how it would justify his selection of data.

Finally, Robocast does not deny that because he simply averaged his data points, Mr. Sherwood gave all six "studies" equal weight, despite knowing nothing about their relative sizes or methodologies. *See id.* Ex. 8 at 159:5-18. Robocast responds, first, by noting that Apple's critique of his approach cited a "single case." Opp. at 19. But Apple's position is hardly controversial. *See, e.g.*, Reference Manual on Scientific Evidence 607 (3d Ed. 2011) ("In a meta-analysis, studies are given different weights in proportion to the sizes of their study populations and other characteristics."). Robocast also emphasizes that the cited case, *In re Neurontin Marketing & Sales Practices Litigation*, No. 04-cv-10981, 2010 WL 559108 (D. Mass. Feb. 12, 2010), involved a "hierarchy of relevant *medical* evidence." Opp. at 19 (Robocast's emphasis). But it would be inappropriate for Mr. Sherwood to give a study with a small sample or no control the same weight as one involving billions of impressions and a rigorous methodology for precisely the same reason that, in medicine, "randomized, controlled trial[s] . . . must be accorded greater weight than observational, non-controlled studies or case reports." *In re Neurontin*, 2010 WL 559108, at *1. Finally, Robocast says the court did not

6

"exclude *any* expert in that decision." Opp. at 19 (Robocast's emphasis). But it did order that "[a]t trial, the Court will not permit an expert to give an expert opinion that a drug is effective" without appropriately weighting controlled studies. *In re Neurontin*, 2010 WL 559108, at *1. Here, Mr. Sherwood *cannot* properly weight his studies because he knows nothing about them.

## II. MR. HOFFMAN'S TESTIMONY SHOULD BE EXCLUDED

### A. Mr. Hoffman's Opinions Rely On Mr. Sherwood

Robocast admits that Mr. Hoffman reached his opinions "[o]n the basis of Mr. Sherwood's opinion," (Opp. at 4), and that "[w]ere Dr. [*sic*] Sherwood's opinion excluded, Mr. Hoffman would need to reconsider his damages opinion." D.I. 372 at 10 n.4. Two conclusions follow: First, regardless of any independent flaws they may have, Mr. Hoffman's opinions necessarily fall with Mr. Sherwood's. Second, to the extent Mr. Hoffman reached his opinions "on the basis of" conclusions Mr. Sherwood did not actually draw, his opinions lack foundation and must be excluded for that reason as well.

Apple established that Mr. Hoffman *does* rely on Mr. Sherwood for three conclusions that Mr. Sherwood not only did not draw, but expressly disavowed, namely: ▮

▮

▮ *See* Mot. at 4-6, 17-18. Robocast attempts to bridge the second gap by submitting a new declaration in which Mr. Sherwood contradicts his deposition testimony. D.I. 379 ¶ 9. But that declaration, as noted above (*see* Section I.A.ii) must be disregarded. And Robocast says *nothing at all* about the first and third disconnects. It does not deny that Mr. Hoffman's analysis requires both of those points to be true; it does not dispute that Mr. Hoffman did no analysis of his own on the subjects but rather assumed Mr. Sherwood had done so; and it does not dispute that Mr. Sherwood actually did no such thing. It follows,

7

then, that Mr. Hoffman reached his conclusions "[o]n the basis of" two opinions that appear nowhere in the record—and that they therefore have no foundation at all.

### B. Mr. Hoffman's Equal Profit Split Is Not Tied To The Facts of the Case

Robocast devotes considerable space to attacking the argument that "an even split of incremental profits between infringer and patentee is *never* appropriate." Opp. at 10 (emphasis added). That is not Apple's argument. It is not that a fifty-fifty split is *per se* unreasonable but, rather, that the division is inappropriate here because it is untethered to the facts of the case.

Robocast responds by insisting Mr. Hoffman *did* base his opinion on "facts specific to Apple and Robocast." *Id.* at 11. █████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████ The same reasoning could be applied to every case, which is precisely why the Federal Circuit rejected the 25% rule of thumb. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317-18 (Fed. Cir. 2011).

8

Notably, Robocast fails to address *Suffolk Technologies LLC v. AOL Inc.*, No. 1:12-cv-00625 (E.D. Va. Apr. 12, 2013), Bussey Decl. Ex. 12, which is directly on point. ████

████

████

████ *Id.* As here, the plaintiff argued the analysis "was tied to the facts of the case," but the facts it referenced were "backed out of the [royalty] calculation," not used to justify a fifty-fifty split. *Id.* at 4. The expert's opinion was therefore "not meaningfully distinguishable from the damages opinion rejected in *Uniloc.*" *Id.* at 3. The same is true here. In contrast, the cases Robocast cites are inapplicable, as the experts there tied splits to "specific facts" in the record. *See, e.g., Sanofi-Aventis Deutschland Gmbh v. Glenmark Pharm. Inc., USA*, No. 07-CV-5855, 2011 WL 383861, at *13 (D.N.J. Feb. 3, 2011).

### C. Mr. Hoffman Violates The Entire Market Value Rule



████ *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69-70 (Fed. Cir. 2012); *see also* Memo. Op., *AVM Techs., LLC v. Intel Corp.*, No. 10-610-RGA (Jan. 4, 2013), D.I. 230 at 6 ("the difficulty in determining a royalty base . . . is not a reason to accept an unreliable method."). ████

███████████████████████████████████████. *See Laser Dynamics,* 694 F.3d at 70 ("[A] per-unit running royalty is not the only form of a reasonable royalty that the parties might have agreed to in a hypothetical negotiation.").

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████ *See Uniloc.,* 632 F.3d at 1317 ("Beginning from a fundamentally flawed premise and adjusting it based on legitimate considerations . . . nevertheless results in a fundamentally flawed conclusion.").

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

Mr. Hoffman could have chosen a methodology that did not necessarily "skew the damages horizon." *Laser Dynamics,* 694 F.3d at 68. ███████████████████
██████████████████████

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court exclude the testimony of Messrs. Sherwood and Hoffman in its entirety.

|  |  |
|---|---|
| OF COUNSEL: | Respectfully submitted,<br><br>POTTER ANDERSON & CORROON LLP |
| Harrison J. Frahn IV<br>Brandon C. Martin<br>Patrick E. King<br>Jason M. Bussey<br>Michael A. Quick<br>SIMPSON THACHER & BARTLETT LLP<br>2475 Hanover Street<br>Palo Alto, CA 94304<br>Tel: (650) 251-5000<br><br>Brian P. McCloskey<br>Gregory T. Chuebon<br>SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, NY 10017<br>Tel: (212) 455-3353 | By: */s/ David E. Moore*<br>    Richard L. Horwitz (#2246)<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE 19801<br>    Tel: (302) 984-6000<br>    rhorwitz@potteranderson.com<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com<br><br>*Attorneys for Apple Inc.* |

Dated: December 16, 2013
PUBLIC VERSION
Dated: December 23, 2013
1134541/ 36689

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on December 23, 2013, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on December 23, 2013, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| Thomas C. Grimm | Steven J. Rizzi |
| Jeremy A. Tigan | Akiva Cohen |
| Morris, Nichols, Arsht & Tunnell | Ramy E. Hanna |
| 1201 North Market Street | Foley & Lardner LLP |
| Wilmington, DE 19801 | 90 Park Avenue |
| tgrimm@mnat.com | New York, NY 10016-1314 |
| jtigan@mnat.com | srizzi@foley.com |
| | acohen@foley.com |
| | rhanna@foley.com |
| | robocast@foley.com |
| | |
| Richard S. Florsheim | Victor de Gyarfas |
| Foley & Lardner LLP | Foley & Lardner LLP |
| 777 E. Wisconsin Avenue | 555 S. Flower Street, Suite 3500 |
| Milwaukee, WI 53202-5306 | Los Angeles, CA 90071-2411 |
| rflorsheim@foley.com | vdegyarfas@foley.com |
| robocast@foley.com | |

                          By:   */s/ David E. Moore*
                                  Richard L. Horwitz
                                  David E. Moore
                                  Bindu A. Palapura
                                  POTTER ANDERSON & CORROON LLP
                                  Tel: (302) 984-6000
                                  rhorwitz@potteranderson.com
                                  dmoore@potteranderson.com
                                  bpalapura@potteranderson.com

1012180 / 36689