IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**Robocast, Inc.,**

                        Plaintiff,

            v.                                     Civil Action No. 11-235-RGA

**Apple Inc.,**

                        Defendant.

MEMORANDUM OPINION

Thomas C. Grimm, Esq., Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Richard D. Kirk, Esq., Bayard, P.A., Wilmington, DE; Steven J. Rizzi, Esq. (argued), Foley & Lardner LLP, New York, NY; Akiva M. Cohen, Esq., Foley & Lardner LLP, New York, NY; Victor de Gyarfas, Esq. (argued), Foley & Lardner LLP, Los Angeles, CA; Justin Gray, Esq., Foley & Lardner LLP, San Diego, CA, attorneys for Plaintiff.

Richard L. Horwitz, Esq., Potter Anderson & Corroon, LLP, Wilmington, DE; Harrison J. Frahn, IV, Esq. (argued), Simpson Thacher & Bartlett LLP, Palo Alto, CA; Jason M. Bussey, Esq. (argued), Simpson Thacher & Bartlett LLP, Palo Alto, CA, attorneys for Defendant.

April 22, 2014

ANDREWS, U.S. District Judge:

Presently before the Court are Defendant Apple, Inc.'s Motion for Summary Judgment of

Non-Infringement and Invalidity (D.I. 302) and related briefing (D.I. 303, 367, 408), Defendant

Apple, Inc.'s Motion for Summary Judgment Regarding Damages, Injunctive Relief, and Indirect

Infringement (D.I. 297) and related briefing (D.I. 298, 372, 406), and Plaintiff Robocast, Inc.'s

Motion for Summary Judgment of No Unenforceability (D.I. 292) and related briefing (D.I. 293,

370, 405). The Court has heard helpful oral argument. (D.I. 434, 435).

## I.    BACKGROUND

This is a patent infringement action. Plaintiff Robocast, Inc. has accused Defendant

Apple, Inc. of infringing U.S. Patent No. 7,155,451 ('the '451 patent"). Apple contends that it

does not infringe the '451 patent and that the patent is invalid and unenforceable due to

anticipation, obviousness, and inequitable conduct. Robocast opposes these contentions.

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED.R.CIV.P. 56(a). The moving party has the initial burden of proving the absence of a

genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477

U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding,

and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a

reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d

177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The

1

burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...." FED. R. CIV. P. 56(c)(1).[1]

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49; *see Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

---

[1] There is an extensive record in this case. To the extent a party does not properly oppose factual assertions, the Court considers the factual assertion to be undisputed and a basis on which to grant summary judgment. FED. R. CIV. P. 56(e)(2) & (3).

2

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States ... during the term of the patent." 35 U.S.C. § 271(a). A two-step analysis is employed in making an infringement determination. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). First, the court must construe the asserted claims to ascertain their meaning and scope. *See id.* The trier of fact must then compare the properly construed claims with the accused infringing product. *See id.* at 976. This second step is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

"Direct infringement requires a party to perform each and every step or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007), *overruled on other grounds by Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989). However, "[o]ne may infringe an independent claim and not infringe a claim dependent on that claim." *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (internal quotations omitted). A product that does not literally infringe a patent claim may still infringe under the doctrine of equivalents if the differences between an individual limitation of the claimed invention and an element of the accused product are insubstantial. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 24 (1997). The patent owner has the burden of proving infringement and must meet its burden by a

3

preponderance of the evidence. *See SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted).

When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if at least one limitation of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of noninfringement is ... appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). Thus, summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused product is covered by the claims (as construed by the court). *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

A patent claim is invalid as anticipated under 35 U.S.C. § 102 if "within the four corners of a single, prior art document...every element of the claimed invention [is described], either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) (alterations in original). As with infringement, the court construes the claims and compares them against the prior art. *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010). Anticipation "may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1349 (Fed. Cir. 2010).

4

A patent claim is invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103; *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-07 (2007). "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." *KSR*, 550 U.S. at 406 (internal citation and quotation marks omitted).

A court is required to consider secondary considerations, or objective indicia of nonobviousness, before reaching an obviousness determination, as a "check against hindsight bias." *See In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1078-79 (Fed. Cir. 2012). "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966). Where "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR*, 550 U.S. at 427.

## III.    DISCUSSION

There are a multitude of arguments presented in the briefs. They will be discussed in turn according to the motion in which they were raised.

5

## A. Non-Infringement and Invalidity

Robocast asserts that Apple infringes independent claims 10, 22, and 37, and dependent

claim 38. Claim 37, asserted against all accused Apple products, is illustrative:

> A method for displaying on a user's computer, content derived from a plurality of
> resources in an organized arrangement comprising the steps of:
> creating a multidimensional show structure of nodes, each node identifying a
>     resource from a plurality of accessible resources;
> without requiring user input, accessing each of said resources identified by each
>     of said nodes wherein at least two of said nodes are spanned concurrently;
> automatically displaying a content corresponding to each of said resources in
>     accordance with said show structure, wherein contents of said at least two nodes
>     are displayed during an overlapping time period.

('451 patent claim 37). Claim 38, dependent on claim 37, adds the limitation, "providing

a duration information, representing the duration within which a corresponding content to

each of said resources is being displayed." ('451 patent claim 38). Claim 10 involves

dragging and dropping icons from one section of the user's terminal to another. Claim 22

involves delivering content to a user by performing an internet search.

There are five accused functionalities present in three Apple products. Robocast

accuses the Showcase and Flowcase functionality present in iTunes, the Parade and Flickr

screensaver present in Apple TV, and the Top Sites functionality present in Safari. Claims

37 and 38 are asserted against all accused functionalities. Claim 22 is only asserted

against the Flickr screensaver. Claim 10 is only asserted against Top Sites.

Showcase and Flowcase are animated banners present in the iTunes store.

Showcase appeared in versions 9 and 10 of iTunes, and was replaced by Flowcase in

version 11. These banners display artwork related to content available for purchase in the

iTunes store. The iTunes software receives a set of images from Apple and then displays

them in a fixed-speed animation.

6

Apple TV is a set-top box that displays content on a TV. Its screensaver displays images from various sources, usually nature photographs included with the Apple TV, but may also display images retrieved from the Flickr photo sharing service. The other accused functionality of Apple TV is an animation of cover art, referred to as the Parade, which appears on the left side of the screen when navigating Apple TV's menus.

The final accused functionality, Top Sites, is a feature of the Safari browser which displays thumbnails of a user's often visited web sites. Top Sites allows the user to navigate to one of the web sites by clicking on the thumbnail.

Apple sets forth three non-infringement arguments and four invalidity arguments. As to infringement, Apple first contends that the accused functions do not include a "node" with duration. Second, Apple argues that Robocast has not put forth evidence that the accused functions span two nodes concurrently. Third, Apple argues that claims 10 and 22 include plain meaning limitations that are not present in Apple's products. As to invalidity, Apple argues that U.S. Patent No. 5,659,793 ("the Escobar reference") anticipates claim 10 as well as claims 37 and 38. Next, Apple argues that the article "Scripted Documents: A Hypermedia Path Mechanism," by Polle T. Zellweger ("the Zellweger reference," D.I. 309 Ex. 12), anticipates claims 37 and 38. Lastly, Apple argues that claim 22 is obvious in light of U.S. Patent No. 6,119,135 ("the Helfman reference") and the Braverman reference (Alan Braverman, *CCI Slide Show 1.0* (Sept. 22, 1994), *at* http://archive.ncsa.illinois.edu/Cyberia/stats/sshow-src/README-sshow, D.I. 309 Ex. 15).

        1.    A Reasonable Jury Could Find That The Accused Functions Include "Nodes"

7

During claim construction, the Court construed "show structure of nodes" as "a structure that is arranged for the display of content by specifying one or more paths through a plurality of nodes." The Court further required that the "show structure of nodes specifies the duration of any display." (D.I. 239 at 2). Additionally, the Court construed "node" as "an identifier of a resource that includes an address to the resource and the duration for which the resource's content is to be presented by default." (D.I. 239 at 16).

Apple argues that its accused functions do not contain nodes because they do not have an identifier which contains both an address and duration. (D.I. 303 at 8). Apple contends that the accused functions use a list of addresses, without duration information, to retrieve image files, after which separate code renders the images into an animation. (D.I. 303 at 8). The separate animation code contains a hard coded timing parameter, which is neither node specific nor modifiable.[2] Apple points to Robocast's expert report, where it contends that Dr. Almeroth conceded that if the claim construction requires that each node include its own duration information, then there is no literal infringement. (D.I. 303 at 9).

This argument is similar to the global duration argument in the related case against Microsoft, C.A. No. 10-1055. There, I stated:

> Because the Court's claim construction requires that a node include both an address and a durational element, a global durational element separate from the node cannot be a substitute for the durational element that must be part of a node. However, the concept of node is an elusive one. By their very definition, nodes contain multiple parts. Where those parts are stored is not necessarily dispositive of whether the node exists. The Court cannot say as a matter of law that the existence of a global durational value means that the [accused] products do not contain nodes with the required durational element.

---

[2] Top Sites does not contain a timing parameter. (D.I. 304 at ¶10). Robocast does not dispute this, so I accept it as accurate. In that case, Top Sites cannot contain a "node" because there is no duration information. Therefore I find that Top Sites does not infringe any asserted claims of the patent.

(C.A. No. 10-1055 D.I. 499 at 10-11). Just as in that case, here the duration is not set on a per

resource base. "Nodes" are not boxes. They do not have clearly defined walls. It is difficult to

determine whether something is inside or outside of a node. What is clear is that there must be a

durational element that is associated with address information. A durational element is present in

the accused functions, with the exception of Top Sites. As for the other four accused functions,

the durational element, while not modifiable,[3] appears to interact with the address information.

Therefore, I find that a reasonable jury could conclude that the accused functions contain nodes.

        Apple also attacks Robocast's doctrine of equivalents argument, arguing that no

reasonable juror could find that a node which does not include a duration, i.e., a global duration,

is the equivalent of a node with a per resource duration. (D.I. 303 at 9). Apple makes three

arguments: that Robocast fails to identify an equivalent for each claim limitation, that the

accused functions do not perform the same function in substantially the same way, achieving the

same results, and that the alleged equivalent would ensnare the prior art. (D.I. 303 at 10). The

first two arguments are an attack on the application of the doctrine of equivalents to the accused

functions. Because I have already denied Apple's request for a finding of no literal infringement,

I do not reach those arguments. In any case, proving infringement under the doctrine of

equivalents is a question of fact, and is therefore best left to the jury. *Crown Packaging Tech.,*

*Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). As for the question of

ensnaring the prior art, Robocast contends that the Escobar reference does not teach an

---

[3] Apple contends that because the claim construction used the term "default" in regard to duration, that duration must be modifiable. (D.I. 408 at 2). I do not agree. The specification states that duration "can be done on a per resource basis." ('451 patent at 15:42-45). The use of the word "can" implies that it is optional.

"address." There is scant discussion regarding the location of the duration information. At this juncture, I cannot say whether the doctrine of equivalents would ensnare the prior art.

> 2.    Robocast Has Put Forth Evidence That The Accused Functions Span Two Nodes Concurrently

Apple's next non-infringement argument is that Robocast has not put forth evidence that the accused functions span two nodes concurrently. The limitation "wherein at least two of said nodes are spanned concurrently" was construed as, "nodes are accessed such that the content corresponding to at least two nodes is accessed at the same time." (D.I. 239 at 24). During claim construction, Robocast argued for a construction requiring that the two nodes be "displayed during an overlapping time period," rather than be "accessed at the same time." (D.I. 239 at 23). Robocast's expert now argues that, at least for Showcase, it accesses two nodes at the same time because it "display[s] the image content associated with multiple nodes simultaneously." (D.I. 307-2 at 80). Apple contends that this assertion contravenes the Court's claim construction and is in fact Robocast's attempt to relitigate the construction. (D.I. 408 at 5).

Robocast replies that the claim construction does not require that content be retrieved at the same time, but only accessed. Robocast argues that this limitation is met because when a person visits a webpage they are simultaneously accessing the web page while the content is displayed. (D.I. 367 at 11). Essentially, because the content is displayed, it must also be accessed. This argument appears dubious. However, each party's expert disagrees with the other's interpretation, which creates a factual dispute. Therefore, summary judgment is inappropriate.

> 3.    Claims 10 and 22 Include Plain Meaning Limitations That Apple's Products May Perform

10

Claim 10 is asserted only against Top Sites and claim 22 is asserted only against the

Flickr screensaver. Apple contends that these products do not infringe the respective asserted

claims because certain limitations are not present in the accused functions. Claim 10 is drawn to:

> A method for displaying in a sequential arrangement on a user's terminal display,
> content derived via a communications network from a plurality of resources the
> method comprising the steps of:
> identifying at least one resource from a plurality of accessible resources via said
>   communications network, wherein each of said resources is associated with a
>   corresponding icon displayed on a first section of said user's terminal;
> creating a show structure of nodes, each node identifying a corresponding
>   resource by recording a sequence of said resources by dragging and dropping
>   said icons on a second section of said user's terminal;
> without requiring user input, automatically accessing each of said resources
>   identified by each of said nodes in accordance with said show structure;
> automatically retrieving a content corresponding to each of said accessed
>   resources; and
> displaying each of said retrieved contents automatically in accordance with said
>   show structure.

('451 patent claim 10). Claim 22 is drawn to:

> A method for transmitting in a sequential arrangement to a user's computer,
> content derived via a communications network from a plurality of resources the
> method comprising the steps of:
> performing an on-line search, in response to which a plurality of search results
>   and their corresponding URL resources are received;
> automatically creating and storing a show structure of nodes, each node
>   identifying a resource from a plurality of accessible resources via said
>   communications network wherein said show structure is created in response to
>   said search results received in response to said on-line search;
> without requiring user input accessing each of said resources identified by each of
>   said nodes;
> retrieving a content corresponding to each of said accessed resources; and
> automatically delivering said content to said user for display on said user's
>   computer in accordance with said show structure.

('451 patent claim 22). Apple asserts that Top Sites does not retrieve and display "said content"

because it displays only a thumbnail snapshot of a web page rather than the web page itself.

Apple also asserts that the Flickr screensaver does not receive "URL resources" because it does

11

not receive a URL itself, but a list of parameters which is compiled to provide a URL. Neither argument is persuasive.

As for Top Sites, Apple argues that the exact same content which was retrieved must be subsequently displayed. Because Top Sites retrieves HTML content, yet displays a thumbnail snapshot, it argues that Top Sites cannot meet these limitations. This argument relies on too narrow of an understanding of the term "content." If I watch a movie in the theater and watch the same movie at home, whether via a DVD, Blu-ray, or streaming video service, I have watched the same movie. The content of the movie is the same. The screen size is surely different. The picture quality might not be as good. But the actors are the same, as is the dialogue. Similarly, when one views the thumbnail images in Top Sites, the content is the same as the web page to which it is linked. For this reason, Apple's argument that Top Sites does not infringe on this basis fails.[4]

As for the Flickr screensaver, this argument depends on what is meant by a "URL resource" as opposed to a "URL." It is undisputed that the Flickr screensaver does not receive URLs in response to a search, but receives parameters which it uses to construct the URL. The patent does not define the difference between "URL" and "URL resources," and only uses the term "URL resources" in claim 22. The claim language at issue is "performing an on-line search, in response to which a plurality of search results and their corresponding URL resources are received." ('451 patent claim 22). URL is short for Uniform Resource Locator. ('451 patent at 1:37). Substituting the full term for the abbreviation, the claim language reads, "and their

---

[4] Of course, since Top Sites does not contain nodes, it does not infringe. *See* footnote 2 *supra*.

corresponding uniform resource locator resources are received." The meaning of this is not entirely clear.

Apple asserts that the only possible reading is that "URL resources" are URLs. Robocast replies that such an interpretation would read out "resources" from the limitation. At the very least, Robocast's argument is strong enough to survive summary judgment. The patent describes resources as being "referred to by the URL" or "indicated by the URL." ('451 patent at 8:35-39). Generally, when a user performs an online search, it results in a list of URLs corresponding to web pages which are responsive to the search terms. With this in mind, the claim can be understood as requiring a search resulting in search results, i.e., a list of URLs, and the corresponding resources linked to those URLs. Of course, neither party has previously asked for a construction of "URL resources." It may be proper to further discuss such a construction at the pretrial conference. However, at this stage, a reasonable jury could conclude that the Flickr screensaver receives "URL resources," whatever they may be.

### 4. Apple Has Not Proven By Clear and Convincing Evidence That The Escobar Reference Anticipates Claim 10

Apple argues that the Escobar reference anticipates claim 10. The parties agree that Escobar discloses all the limitations of claim 10 except for nodes. Apple contends that what Escobar calls a "pointer" is an "address," which would meet the Court's construction of node as "an identifier of a resource that includes an address to the resource and the duration for which the resource's content is to be presented by default." (D.I. 239 at 16). Robocast contends that a "pointer" is not an "address."

At this time, there is dispute of fact over whether a "pointer" is an "address." Apple's expert states that it is an address. Robocast's expert states that it is not. Patents are presumed

13

valid and invalidity must be proven by clear and convincing evidence. *Microsoft Corp v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). Disputed material issues of fact concerning how one of ordinary skill in the art would understand disclosure of a particular technology mandates denial of summary judgment of anticipation. *Osram Sylvania v. Am. Induction Techs.*, 701 F.3d 698, 706 (Fed. Cir. 2012). This is such a case. Apple's motion for summary judgment of invalidity of claim 10 is denied.

5.     Apple Has Not Proven By Clear and Convincing Evidence That The Escobar Reference Anticipates Claims 37 and 38

Apple next argues that Escobar anticipates claims 37 and 38. The parties agree that Escobar teaches all limitations except for displaying content of at least two nodes during an overlapping time period and accessing two nodes at the same time. Because I find that there is a disputed issue of fact regarding nodes, *see supra*, I need not reach these arguments. However, I do make one note. Robocast states that Apple misconstrued Escobar's discussion of "composite video." (D.I. 367 at 21). Robocast contends that "composite video," as used in the Escobar reference, refers to the analog transmission of video, and not to a graphics overlay. While Robocast may be correct that composite video may ordinarily refer to the analog transmission of video, as used in Escobar, the term clearly refers to a graphics overlay. For example, Escobar describes taking text and graphics information and "combin[ing] that information with the frames of decompressed video to produce composite video frames." (D.I. 308-2 Ex. 9 at 13:43-45). This is a case of a patentee being his own lexicographer.

6.     Apple Has Not Proven By Clear and Convincing Evidence That The Zellweger Reference Anticipates Claims 37 and 38

Apple next argues that the Zellweger reference anticipates claims 37 and 38. Robocast's expert argues that Zellweger neither discloses "presenting nodes concurrently" nor accessing

14

nodes "wherein at least two of said nodes are spanned concurrently." In support of this, Apple

cites to the reference itself, which discloses "parallel paths, which are paths that can execute

simultaneously and may be able to fork, join, or synchronize with activities on another branch."

(D.I. 309-1 Ex. 12 at 2). Apple contends that this disclosure meets both contested claim

limitations.

In response, Robocast argues that the Zellweger reference is not enabling (D.I. 367 at 22;

D.I. 368-1 at ¶ 233-34, 237-38), and, in any event, does not disclose the contested claim

limitations. As far as who bears the burden on enablement of an anticipatory printed publication,

the law is unclear. Robocast cites to *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d

1294, 1301 (Fed. Cir. 2002), for the proposition that the challenger bears the burden to establish

that allegedly anticipatory prior art is enabling. Because Robocast contends that the Zellweger

reference is not enabling, it argues that summary judgment is inappropriate. Apple, on the other

hand, cites to *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir.

2003), where the Federal Circuit held that "a presumption arises that both the claimed and

unclaimed disclosures in a prior art patent are enabled." However, this holding was explicitly

limited to prior art patents, not printed publications. *Id.* at 1355 n. 22 ("We note that by logical

extension, our reasoning here might also apply to prior art printed publications as well, but as

Sugimoto is a patent we need not and do not so decide today.").

Apple contends that the presumption of enablement was extended to printed publications

in *In re Antor Media Corp.*, 689 F.3d 1282 (Fed. Cir. 2012). However, in that case the

presumption was only applied to publications during patent prosecution, not during district

court proceedings. *Id.* at 1289 ("[W]e therefore hold that, during patent prosecution, an

15

examiner is entitled to reject claims as anticipated by a prior art publication or patent without conducting an inquiry into whether or not that prior art reference is enabling.").

While there may be reasons to presume a prior art printed publication enabled during prosecution but not during a district court proceeding, none are readily apparent. The Federal Circuit has held that patents are presumptively enabled, and implied that prior art printed publications might be as well. *See Amgen*, 314 F.3d at 1355. Furthermore, that presumption was extended to prior art printed publications, at least in the context of patent prosecution. *See In re Antor*, 689 F.3d at 1289. While the Federal Circuit has not had the chance to extend that presumption to prior art printed publications in district court proceedings, I do. I cannot see any logical reason to distinguish between unclaimed disclosures in a prior art patent and the disclosures in a prior art printed publication. Both are written disclosures on which a patent has not been granted. Therefore, based on the reasoning set forth in *Amgen*, I hold that a district court should presume that a prior art printed publication is enabled.

The inquiry does not, however, end with the presumption. Since "a court cannot ignore an asserted prior art patent in evaluating a defense of invalidity for anticipation, just because the accused infringer has not proven it enabled," *Amgen*, 314 F.3d at 1355, Apple need not set forth reasons to find that Zellweger is enabled. It is presumed to be enabled. I cannot ignore the Zellweger reference merely because Robocast argues that it is not enabled. Robocast does more, however, than set forth argument. Dr. Almeroth and Dr. Zellweger have both opined that the Zellweger reference is not enabling. This makes the enablement of this reference a disputed factual issue. Thus, I cannot hold that Apple has proven by clear and convincing evidence that the Zellweger reference anticipates claims 37 and 38.

16

It will be necessary at some point to determine how the presumption of enablement affects the evidentiary burden on invalidity.[5] This Court has previously confronted this issue. "[C]ourts have recognized that if the burden shifts to the patentee to demonstrate nonenablement, the burden is not as high as the clear and convincing standard needed to demonstrate invalidity. This lower evidentiary burden suggests to the Court that even if the patentee is required to present some evidence of nonenablement, the burden still rests on the party asserting invalidity to ultimately demonstrate by clear and convincing evidence that the prior art is enabled." *Forest Labs., Inc. v. Ivax Pharm., Inc.*, 438 F. Supp. 2d 479, 487 n. 3 (D. Del. 2006), *aff'd*, 501 F.3d 1263 (Fed. Cir. 2007) (internal citations omitted). Unless I am convinced otherwise, I expect to follow *Forest Labs.* in determining whether Zellweger is enabling.

### 7.  Apple Has Not Proven By Clear and Convincing Evidence That Claim 22 is Obvious in Light of Helfman and Braverman

Apple's expert sets forth a *prima facie* case of obviousness of claim 22 based on Helfman and Braverman. If I were to decide this issue solely on the merits of the combination of Helfman and Braverman, I would likely rule in Apple's favor. Robocast's rebuttal arguments, especially regarding objective indicia of nonobviousness, are thin. However, there is an underlying factual issue that precludes me from reaching the merits of the obviousness argument. The dispute is whether Helfman is prior art. Robocast asserts that it is entitled to an earlier invention date. Apple contends that Robocast's evidence is insufficient as a matter of law to establish an earlier invention date. (D.I. 408 at 13). I confronted this very same issue in the corresponding case against Microsoft. There, I stated:

---

[5] It appears that enablement of an anticipatory reference is an issue to be resolved by me. *See Amgen*, 314 F.3d at 1334 ("Enablement is a question of law.") (internal citation omitted). It might be advisable to have an evidentiary hearing on this issue before the trial.

17

A patentee may establish a date of invention prior to the filing date by showing an earlier conception and diligence through to the patent filing date. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996)…[T]he 'real issue is whether the corroborating documents provide enough evidence for the jury to believe [inventor] testimony, not whether the documents themselves are enabling disclosures. I therefore leave it to the jury to decide whether Mr. Torres was in possession of the claimed invention prior to the filing date. As for diligence, "[t]he question of reasonable diligence is one of fact." *Brown v. Barbacid*, 436 F.3d 1376, 1379 (Fed. Cir. 2006). Microsoft's arguments are thin and sufficiently contested by Robocast to make this a factual dispute for the jury.

(C.A. No. 10-1055 D.I. 499 at 17) (internal citation omitted). I see no reason why this case merits a different outcome. There is an underlying factual dispute of whether the Helfman reference is prior art. Therefore, summary judgment on this issue is inappropriate.

## B. Damages, Injunctive Relief, and Indirect Infringement

Apple sets forth three arguments in this motion. First, that Robocast cannot establish a reasonable royalty for Safari's Top Sites, the Flickr screensaver, or iTunes,[6] and therefore summary judgment of no damages should be granted. Second, that Robocast cannot establish willfulness because there was no pre-suit knowledge, and therefore Robocast also cannot establish pre-suit indirect infringement. Third, that Robocast's request for a permanent injunction be dismissed because Robocast cannot establish irreparable harm.

### 1. Robocast Need Not Rely on Expert Testimony to Show Damages

Apple argues that because Robocast no longer has any expert testimony regarding damages, summary judgment of no damages is appropriate. (D.I. 298 at 10-11). Robocast responds that expert testimony is not required to prove damages, or that it may rely on Apple's expert report by reading Mr. Sims' deposition testimony into the record at trial. (D.I. 372 at 9).

---

[6] Mr. Hoffman treated iTunes and the Parade functionality of Apple TV as one for the purposes of damages. The Court granted Apple's motion to exclude Mr. Sherwood's testimony, which formed the basis of Mr. Hoffman's opinions. (D.I. 440).

18

Apple replies that it could de-designate Mr. Sims and prevent Robocast from reading his deposition testimony absent exceptional circumstances. (D.I. 406 at 4).

Apple is correct inasmuch as Robocast has no remaining expert testimony on damages.[7] However, I do not agree that summary judgment of no damages is appropriate. While Apple envisions a scenario where Robocast cannot prove any damages, much can happen between now and trial. Perhaps this is an exceptional circumstance in which it would be appropriate to allow Robocast to read Mr. Sims' deposition into the record. In any event, while Robocast finds itself in an unenviable position at this point, the Court cannot say as a matter of law that Robocast is unable to prove any damages.

### 2. Robocast Cannot Establish Pre-Suit Willful or Indirect Infringement

In order to show willful infringement, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). *Seagate* sets forth a two part test with both an objective and subjective component. "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id. Seagate* left open the application of this standard. *Id.* However, in *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012), the court held "that the objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to de novo review."

---

[7] Robocast has, however, filed a motion for leave to supplement its expert report. The Court has yet to rule.

The main issue here is whether Robocast can make a showing of pre-suit knowledge. There are two relevant interactions between Robocast and Apple. The first is that Fred Reynolds, then a Senior Marketing Manager on Apple's Design and Publishing Markets Team, in 1999, attended a trade show where Robocast had a booth. Robocast asserts that because Mr. Reynolds was at the trade show, he would have been to the Robocast booth, and would have seen Robocast's "standard trade show pitch," which involved handing out materials marked "patent pending." Even making all inferences in Robocast's favor, this interaction cannot form the basis for a finding of willful infringement. In 1999, Robocast's patent did not exist. In order to willfully infringe, "the patent must exist and one must have knowledge of it." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).

The second interaction between Robocast and Apple occurred in 2007 at a Social Venture Conference. At lunch, Mr. Torres happened to sit at a table with an Apple music executive named Gary Stewart. During a conversation, Mr. Stewart and Mr. Torres lamented that "there weren't more liner note type things out there in the world." (D.I. 300-2 at 32). Apparently, this prompted Mr. Torres to suggest that his patent might be amenable to such an application. Specifically, Mr. Torres testified, "I just got granted this great patent, and I remember I had memorized the patent number as soon as it was, you know, awar[ded] to me... So I recall saying just got this great patent, 7,155,451 and rattling that off. That could be great, and I remember this part, in providing a liner note show for music." (D.I. 300-2 at 31).

Robocast contends that it is entitled to a justifiable inference that Mr. Stewart had knowledge of the '451 patent. (D.I. 372 at 14). However, even assuming Mr. Stewart had been told of the patent, no reasonable jury could find that Apple willfully infringed the patent. There is

no evidence that Mr. Stewart took down the patent number, or had any idea about the claimed subject matter, or that any of Apple's products could possibly infringe the patent. Even if this evidence were sufficient to meet the subjective prong of *Seagate*, and I do not think it is, there is simply no evidence that the objective risk was "known or so obvious that it should have been known to the accused infringer." I therefore grant Apple's motion for summary judgment of no pre-suit willful infringement.

As for post-suit willfulness, I note that:

[I]n ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct. It is certainly true that patent infringement is an ongoing offense that can continue after litigation has commenced. However, when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct. By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct. Similarly, if a patentee attempts to secure injunctive relief but fails, it is likely the infringement did not rise to the level of recklessness.

*Seagate*, 497 F.3d at 1374 (citations omitted). Robocast did not move for a preliminary injunction. Apple's defenses are reasonable. *See Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010) (holding that the objective prong of willfulness was not met where a defendant's defenses were reasonable). Allowing a finding of willfulness based on post-suit conduct would put enhanced damages at issue whenever a defendant opted to deny infringement and take the case to trial. *See LML Holdings, Inc. v. Pacific Coast Distributing Inc.*, 2012 WL 1965878, *5 (N.D. Cal. May 30, 2012). Allegations of willfulness based solely on conduct post-dating the filing of the original complaint are

21

insufficient. The conduct before suit was filed does not create a triable issue as to willfulness; the

filing of the suit does not change "non-willfulness" into willfulness.

As for indirect infringement, Apple argues that Robocast's inability to establish pre-suit

knowledge is fatal to its indirect infringement claims. (D.I. 298 at 16). Robocast does not appear

to contest that pre-suit willfulness and indirect infringement rise and fall together. Having failed

to show that a triable issue remains as to pre-suit knowledge, I grant summary judgment of no

pre-suit indirect infringement for Apple. However, Robocast may still go forward with any

claims of post-suit indirect infringement.

### 3. Robocast May Be Entitled to Injunctive Relief

Apple asks that Robocast's request for a permanent injunction be denied because

Robocast cannot establish irreparable harm. (D.I. 298 at 17). In order to obtain a permanent

injunction, a plaintiff must establish: (i) irreparable harm, (ii) the inadequacy of money damages,

(iii) the absence of inequitable hardships, and (iv) that an injunction would not disserve the

public interest. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Apple makes four

points against an injunction: Robocast sells no products, the parties do not compete, Robocast's

"policy" is to monetize the patent, and Robocast did not seek preliminary relief.

In response, Robocast's only real argument is that should Apple's motion for summary

judgment of no damages be granted, Robocast would be left without an adequate remedy at law,

which would be sufficient irreparable harm for an injunction. Robocast concedes that it was

unlikely to be able to make a showing of irreparable harm at the time the complaint was filed.

(D.I. 372 at 15 n. 5). I do not think the fact that Robocast's damages analysis is insufficient is a

basis for a finding of irreparable harm. Nevertheless, the question of whether a permanent

22

injunction is an appropriate remedy is better decided after a trial, and I cannot say as a matter of law that Robocast cannot obtain a permanent injunction. I therefore deny Apple's motion for summary judgment of no injunction, without prejudice to a renewal of the request if Apple loses at trial.

## C. Inequitable Conduct

This motion is almost identical to Robocast's motion filed in C.A. No. 10-1055 at D.I. 295.[8] Essentially, Robocast sets forth two arguments, that the patent is not unenforceable due to inequitable conduct, nor is it unenforceable due to unclean hands. Apple proposes two theories for why the '451 patent is unenforceable, both of which rely on the same set of facts. The first is that the '451 patent is unenforceable due to inequitable conduct. The second is that the '451 patent is unenforceable due to unclean hands arising from litigation conduct. Robocast contends that both of these theories fail as a matter of law. A brief factual background is in order.

For the purposes of deciding this issue I take as true the following allegations.[9] The inventor filed provisional application number 60/025,360 ("the provisional") on September 3, 1996. The inventor filed application number 08/922,063 ("the '063 application") on September 2, 1997, claiming priority to the provisional. The inventor filed application number 09/144,906 ("the '906 application") on September 1, 1998, claiming priority to both the provisional and the '063 application as a continuation in part. The inventor prosecuted both non-provisional applications.

---

[8] Therefore, much of what follows is the same as what appears in the memorandum opinion addressing the issue in the Microsoft case.

[9] Robocast of course does not concede that there was any inequitable conduct.

23

In November 1999, in response to a rejection of the '063 application over *Richardson* in view of *Davis*, the inventor, Mr. Torres, submitted a false declaration to the PTO attempting to swear behind the *Richardson* reference. The Examiner did not find the declaration persuasive, and continued to reject the claims of the '063 application, but in reliance on other references. The '063 application was subsequently abandoned in January 2002. The *Richardson* reference was disclosed, *see* PTO-1449 dated December 23, 1999, and overcome during prosecution of the '451 patent without any reliance on the false declaration. The '906 application eventually issued as the '451 patent on December 26, 2006.

Apple contends that the inequitable conduct in the parent application in November 1999 renders the child unenforceable, even though the inequitable conduct occurred after the child application was filed in 1998. I assume that the conduct indeed was material and would have caused the '063 application to be unenforceable. Apple relies on the "doctrine of infectious unenforceability"[10] for the contention that the '451 patent is also unenforceable. *See Agfa Corp. v. Creo Products Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (explaining that infectious unenforceability occurs when inequitable conduct renders unenforceable claims in a related application).

The law of inequitable conduct grew out of the unclean hands doctrine, and "is no more than the unclean hands doctrine applied to particular conduct before the PTO." *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 812 (Fed. Cir. 1990). The unclean hands doctrine applies where:

> [S]ome unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. [Courts]

---

[10] District Courts refer to the "doctrine of infectious unenforceability." To date, the Federal Circuit has not adopted that moniker as its own.

24

> do not close their doors because of plaintiff's misconduct, whatever its character,
> that has no relation to anything involved in the suit, but only for such violations of
> conscience as in some measure affect the equitable relations between the parties
> in respect of something brought before the court for adjudication. They apply the
> maxim, not by way of punishment for extraneous transgressions, but upon
> considerations that make for the advancement of right and justice. They are not
> bound by formula or restrained by any limitation that tends to trammel the free
> and just exercise of discretion.

*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245-46 (1933). In the context of

inequitable conduct before the Patent Office, that conduct "renders unenforceable all patent

claims having an immediate and necessary relation to that conduct, regardless of whether the

claims are contained in a single patent or a series of related patents." *Truth Hardware Corp. v.*

*Ashland Products, Inc.*, 2003 WL 22005839, at *1 (D. Del. Aug. 19, 2003).

Indeed, the Federal Circuit recognizes that "inequitable conduct early in the prosecution

may render unenforceable all claims which eventually issue from the same or a related

application." *Agfa*, 451 F.3d at 1379. Of course, later applications are "not always tainted by the

inequitable conduct of earlier applications." *Id.* For instance, in *Baxter Int'l, Inc. v. McGaw, Inc.*,

149 F.3d 1321 (Fed. Cir. 1998), the court distinguished divisional applications, noting that:

> [W]here the claims are subsequently separated from those tainted by inequitable
> conduct through a divisional application, and where the issued claims have no
> relation to the omitted prior art, the patent issued from the divisional application
> will not also be unenforceable due to inequitable conduct committed in the
> parent application.

*Id.* at 1332. There are two ways to look at the distinction drawn in *Baxter.* The first is that the

omitted art itself was not material to the claims in the divisional, and therefore the inequitable

conduct did not infect the divisional. This is merely another way of saying that the conduct itself

did not constitute inequitable conduct in the divisional. Requiring that the inequitable conduct

itself have a causal effect on the issuance of the claims at issue would render the doctrine of

25

infectious unenforceability inapplicable in the present case, since they were on a separate track before the inequitable conduct occurred.

The second way to approach the *Baxter* case, and the way I approach it, is that inequitable conduct infects the invention itself, and all claims which form a part of that invention. A divisional application is drawn to a different invention, and different inventions do not share an "immediate and necessary" relation to each other. Continuation applications, however, relate to the same invention. If a patentee who has engaged in inequitable conduct included the invention in one application, all the claims would be unenforceable. If the same patentee split the claims into two applications, why should the result be any different? To hold otherwise would fly in the face of the rule that inequitable conduct renders all claims unenforceable, "not just the particular claims to which the inequitable conduct is directly connected." *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1561 (Fed. Cir. 1984); *see also In re Clark*, 522 F.2d 623, 626 (CCPA 1975) ("[Inequitable conduct] goes to the patent right as a whole, independently of particular claims".).

In its brief, Apple argues that because the claims in the '451 patent are similar to those in the '063 application, the entire '451 patent can be held unenforceable by inequitable conduct during the prosecution of the '063 application. I need not decide that issue at this point. It appears that at a minimum some claims in the '451 patent indeed could have been included in the '063 application. If that is the case, then at the very least those claims could be unenforceable. The extent to which the inequitable conduct in the '063 application actually infects the '451 patent is best left for trial, where the facts can be more clearly developed.

26

While the exact contours of any infectious unenforceability lack clarity, the issue of unclean hands is much clearer. Apple alleges that Mr. Torres fabricated evidence. If Robocast relies on that evidence to obtain an earlier date of conception, knowing that it is fabricated, that can form the basis for litigation misconduct. *See Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1372 (Fed. Cir. 2001) ("affirming dismissal based on unclean hands where patentee submitted fabricated evidence in discovery to support earlier invention date); *Intamin, Ltd. v. Magnetar Technologies Corp.*, 623 F. Supp. 2d 1055, 1076 (C.D. Ca. 2009) (dismissing suit under unclean hands doctrine based on forged assignment documents). The fact that the documents might have been forged before the start of litigation is irrelevant. It is the reliance on forged documents that would be misconduct.

## IV.    CONCLUSION

For the reasons above, Defendant Apple, Inc.'s Motion for Summary Judgment of Non-Infringement and Invalidity (D.I. 302) is granted in part and denied in part. Defendant Apple, Inc.'s Motion for Summary Judgment Regarding Damages, Injunctive Relief, and Indirect Infringement (D.I. 297) is granted in part and denied in part. Plaintiff Robocast, Inc.'s Motion for Summary Judgment of No Unenforceability (D.I. 292) is denied. An appropriate order will be entered.